Filed 10/23/14  P. v. Marrujo CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E058301 |
| v. | (Super.Ct.No. RIF1205259) |
| THOMAS LOUIS MARRUJO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Ronald L. Taylor, Judge. (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Mark D. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Laura A. Glennon and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

Following a bench trial, the trial court found defendant guilty of tampering with a railroad (Pen. Code, § 587, subd. (a))[1] and possession of stolen property (§ 496, subd. (a)). The trial court also found true that defendant had suffered two prior serious or violent felony convictions (§§ 667, subds. (c), (e)(2)(A), 1170.12, subd. (c)(2)(A)). Defendant was sentenced to a total term of six years in state prison with credit for time served. On appeal, defendant contends (1) there was insufficient evidence to support his convictions for tampering with a railroad and possession of stolen property; and (2) his due process rights were violated when the trial court relied on hearsay statements for an improper purpose to support his convictions. We reject these contentions and affirm the judgment.

I

FACTUAL BACKGROUND

On April 25, 2012, Riverside County Sheriff's Sergeant Raymond Huskey was on patrol in a marked vehicle in the city of Perris when he was approached by a citizen. The citizen informed the sergeant that there was a person tampering with a nearby railroad approximately two miles east of their location, and it appeared there was a vehicle waiting nearby for the person on the tracks.

When Sergeant Huskey arrived at the railroad in less than two minutes, he saw defendant crouched over the center of the railroad tracks, and a vehicle parked about

---

[1] All future statutory references are to the Penal Code unless otherwise stated.

400 feet away near a water treatment plant.  Sergeant Huskey pulled over, parked his patrol car, and made eye contact with defendant, who appeared nervous.  Defendant stood up and began walking away from Sergeant Huskey.  As Sergeant Huskey exited his car, the nearby waiting vehicle accelerated from the railroad and out of sight.

While walking toward defendant, Sergeant Huskey yelled to defendant, " 'What are you doing?' "  Defendant continued walking.  Defendant did not stop or turn around to Sergeant Huskey, but responded, " 'Just walking.' "  As Sergeant Huskey approached defendant, he noticed that defendant had about six copper wire coils approximately 18 inches long clenched in his left fist.  Defendant was holding his fist close to the middle of his body.  Based on the sergeant's training and experience, the sergeant believed defendant was trying to conceal the copper wire coils.  The copper wire coils appeared as if they had been freshly cut because the color of the copper ends was a brighter color than the rest of the coil.  When Sergeant Huskey asked defendant, "where he had got those," defendant replied that he had found them on the tracks.  Sergeant Huskey then asked defendant if he knew how much money he could receive for those coils.  Defendant responded, " '$2.81 a pound.' "  Sergeant Huskey thereafter detained defendant, and asked defendant if he had any weapons on him.  Sergeant Huskey also asked defendant to lift his shirt because he was wearing shorts and a shirt that went below his waistline.  When defendant complied, Sergeant Huskey noticed that defendant had a wire cutting tool in his right, front pants pocket.

Based on his observations, Sergeant Huskey then walked back to the railroad location where he had first observed defendant squatting. Near that area, the sergeant noticed the wires that were still affixed to the tracks also appeared to be newly cut with a bright copper-colored end, and looked identical to the copper wires found on defendant. In a 40-foot area in front of where defendant had been walking, Sergeant Huskey observed no cut wires; however, in the area behind where Sergeant Huskey first made contact with defendant, the sergeant found approximately four locations where the wires had been cut. Based on his experience, Sergeant Huskey believed the wire cutting tool defendant possessed was capable of cutting the copper wires on the tracks. Sergeant Huskey also opined that the condition of the copper wires did not suggest they had fallen off of the tracks from normal wear and tear; rather, it appeared as if they had been recently cut. Sergeant Huskey thereafter called the Burlington Northern Santa Fe (BNSF) Railroad Police, arrested defendant, and transported defendant to jail.

Daniel Hardcastle (Hardcastle), a senior special agent for BNSF, responded to Sergeant Huskey's call. Sergeant Huskey showed Hardcastle the area of the cut wires and the wire cutting tool defendant had possessed. Hardcastle also believed that the wires had been freshly cut and that the wire cutting tool defendant possessed was capable of cutting the wires on the railroad tracks. Hardcastle noticed eight sections of cut wire in the area of the tracks where defendant had been observed walking and no other areas on the tracks where wires had been cut. Hardcastle explained that in inspecting the 350 feet of railroad tracks ahead of defendant, he observed no cut sections of wire on the

4

tracks; however, walking back about 300 feet from where defendant had been seen, he noted eight sections of cut wire. In similar investigations, Hardcastle had never come across wires laying on the tracks.

Dennis Skeels (Skeels), the signal manager for BNSF who manages the software and hardware for the section of the railroad where defendant was found, also concluded that the copper wire coils defendant possessed appeared to be freshly cut. Skeels explained that while BNSF will cut their own wires at times, they do not use the type of tool defendant possessed; instead, BNSF uses a hammer and chisel. Skeels did not believe the wire coils were cut with a hammer and chisel. Skeels also stated that BNSF would never leave cut wire on the railroad tracks, as it is company policy to replace the wire immediately and the cut wire would cause an activation failure and affect the trains' operation.

Defendant claimed that he was walking on the tracks on the day of the incident and saw a wire cutter and picked it up. He then saw several cut wires. As he reached down to pick up the copper wires, he heard someone say, " 'Hey, what are you doing?' " Defendant responded, " 'Just walking.' " When questioned about the wire found in his possession, defendant stated that he found it.

Defendant stated that he had walked around those tracks many times. He admitted that he knew he could receive about $2 a pound for taking and selling copper wires, called scrapping. He also stated that he had "scrapped" copper pipes in the past and does this with anything he can find. Defendant also acknowledged that he had previously

5

suffered two felony burglary convictions in 1986 and 1987, and a petty theft with a prior conviction in 1993.

## II

## DISCUSSION

Defendant contends there was insufficient evidence to support his convictions for tampering with a railroad (§ 587, subd. (a)) and possession of stolen property (§ 496, subd. (a)).  Defendant reasons the only evidence supporting his convictions consisted of the citizen's statements to the sergeant, and those statements could not be considered for their truth.  When the trial court did so, it violated his rights to due process and a fair trial.  Defendant further claims had the trial court not relied on the statement for its truth, it would have found there was insufficient evidence to support its verdict.  Given the interrelated nature of defendant's substantial evidence argument with his challenges to the citizen's statements admitted at trial, we will first address the admissibility of the statements made by the citizen to the sergeant.

A.      *Admission of Citizen's Statement*

Sergeant Huskey testified that he was driving in his patrol vehicle stopped at an intersection when a fellow motorist stopped alongside his vehicle and informed him that he had seen something up the road.  At this point, the prosecutor interjected, and the following colloquy occurred:

6

"[PROSECUTOR]: And, Your Honor—anticipating a hearsay objection, we're not offering this for the truth of the matter asserted. It goes to the officer's subsequent actions and investigation.

"THE COURT: That would be an exception to the hearsay rule; so you may proceed.

"[PROSECUTOR]: At that point, what did he tell you?

"[SERGEANT HUSKEY]: That there was a person on the railroad tracks down by the freeway about two miles east of my location, and he was tampering or doing something to the railroad tracks.

"[DEFENSE COUNSEL]: I object, Your Honor. At the last trial, that was excluded.

"THE COURT: Well—

"[DEFENSE COUNSEL]: Tampering.

"THE COURT: You know, this is a court trial, so the jury is not going to be prejudiced. But, the statement that the citizen made—and actually, I don't really think that reporting a crime amounts to hearsay, but in the event it was hearsay, there is an exception because then this would explain—it's called 'state of mind,' why the officer then did what he did next. Okay?

"[DEFENSE COUNSEL]: Okay.

"THE COURT: But I'll note your statement for the record.

7

"[PROSECUTOR]:  Thank you.  And for the record, I'd also make another exception under the contemporaneous statement clause.

"THE COURT:  It will be an excited utterance as well under the Evidence Code."

The prosecutor then continued with questioning Sergeant Huskey.  Sergeant Huskey testified the motorist also stated there was a vehicle waiting for the person on the tracks.

The People initially claim that defendant forfeited his right to argue the hearsay statements were improperly admitted.  The People also argue that the statements were properly admitted as a spontaneous statement under the hearsay exception rule, aside from it being admitted for a nonhearsay purpose.  The People further assert that even if the trial court erred in improperly admitting the statements or relying upon them for their truth, the error was harmless.

Defendant counters that the hearsay statements of the citizen were not admitted into evidence or offered for the truth of those statements, and therefore the trial court erred in relying on the citizen's statements in finding defendant guilty of the charges.  To support his position that the trial court relied heavily on the truth of the citizen's statements, defendant quotes from the trial court's statement of reasons in finding defendant guilty.

The People's forfeiture contention lacks merit because in the case before us, the prosecutor, "anticipating a hearsay objection," stated the People were not offering the statement for the truth of the matter asserted.  Defense counsel had neither the

8

opportunity nor the need to object under these circumstances. In addition, it appears defense counsel objected to the citizen's statement, stating the statement was excluded at the last trial.[2] Therefore, under these circumstances, we find defendant did not forfeit his evidentiary claim on appeal.

We also reject defendant's claim that the citizen's statements were not admitted into evidence. There are several ways the citizen's statements could properly be admitted into evidence: either as nonhearsay or as statements falling within the spontaneous declaration or state of mind exceptions to the hearsay rule. Otherwise, the sergeant's testimony of what the citizen reported would be inadmissible hearsay erroneously received into evidence.

Hearsay is "evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a).) Unless subject to an exception, hearsay evidence is inadmissible. (*Id*., subd. (b).)

Under Evidence Code section 1240: "Evidence of a statement is not made inadmissible by the hearsay rule if the statement: [¶] (a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and [¶] (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception."

---

[2] Defendant had initially been tried by a jury in October 2012. However, the trial court declared a mistrial after the jury announced it was deadlocked on both counts. A bench trial commenced on January 2, 2013.

"'To render [statements] admissible [under the spontaneous declaration exception] it is required that (1) there must be some occurrence startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance; and (3) the utterance must relate to the circumstances of the occurrence preceding it.' [Citations.]" (*People v. Poggi* (1988) 45 Cal.3d 306, 318.)

As used in Evidence Code section 1240, "spontaneous" is used in the sense of "to describe actions undertaken without deliberation or reflection." (*People v. Farmer* (1989) 47 Cal.3d 888, 903.) "The crucial element in determining whether a declaration is sufficiently reliable to be admissible under this exception to the hearsay rule is . . . not the nature of the statement but the mental state of the speaker." (*Ibid.*) Ultimately, the decision whether to admit a statement as a spontaneous utterance lies within the discretion of the trial court. (*People v. Gallego* (1990) 52 Cal.3d 115, 175.)

Here, the trial court did not make any findings as to why the citizen's statements to the sergeant were "spontaneous" declarations. The People claim "it appears from the record that the motorist saw [defendant] on the tracks [which were only two miles from the location where the citizen made the statements], this observation alarmed him, and while he was still under the stress of this observation, he told Sergeant Huskey what he had seen." However, these claims by the People appear to be speculative as to: (1) when the citizen observed defendant on the railroad tracks; and (2) whether the citizen was still

10

under the effect of that event at the time he reported his observation to Sergeant Huskey. Nothing in the record indicates the citizen's statements were made at or shortly after he observed defendant on the railroad tracks or that he was still under the stress of excitement caused by the observation. Nothing in the record suggests the citizen did not have an opportunity to reflect in the interim between the time he observed defendant and the time he reported his observation to the sergeant. Nothing in the record shows that the citizen was in an excited state so that he was unable to reflect or deliberate at the time of reporting his observation to the sergeant. We conclude the trial court erred in admitting the citizen's statements under the spontaneous declarations exception to the hearsay rule.

We also conclude that the state of mind exception to the hearsay rule does not apply to this case because the statute governing that exception, Evidence Code section 1250, deals with admissibility of a statement offered to prove a declarant's state of mind or conduct. Evidence Code section 1250 provides: "(a) Subject to Section 1252 [of the Evidence Code], evidence of a statement of the declarant's then existing state of mind, emotion, or physical sensation (including a statement of intent, plan, motive, design, mental feeling, pain, or bodily health) is not made inadmissible by the hearsay rule when: [¶] (1) The evidence is offered to prove the declarant's state of mind, emotion, or physical sensation at that time or at any other time when it is itself an issue in the action; or [¶] (2) The evidence is offered to prove or explain acts or conduct of the declarant. [¶] (b) This section does not make admissible evidence of a statement of memory or belief to prove the fact remembered or believed."

11

This exception allows "evidence of a declarant's statements regarding his or her then existing state of mind or emotion, when the *declarant's* state of mind or emotion is at issue in the case, or when the evidence is offered to prove or explain the *declarant's* acts or conduct." (*People v. Ruiz* (1988) 44 Cal.3d 589, 608, original italics.) The citizen's statements do not reflect the citizen's emotional state and the citizen's state of mind or emotion was not at issue in this case. The trial court erroneously stated the state of mind exception applied to explain "why the officer then did what he did next." A hearsay statement offered to prove the conduct of someone other than the declarant is not admissible under the state of mind hearsay exception embodied in Evidence Code section 1250. (*People v. Noguera* (1992) 4 Cal.4th 599, 622.)

Since neither the spontaneous declaration nor the state of mind exceptions to the hearsay rules apply to these facts, we next inquire whether the testimony can be deemed nonhearsay. An out-of-court statement is admissible for a nonhearsay purpose if the nonhearsay purpose is relevant to the dispute. (*People v. Bunyard* (1988) 45 Cal.3d 1189, 1204.) Thus, to explain his or her investigation of a crime scene, an officer can testify regarding a witness's statement if the officer's investigation of the crime scene is relevant to an issue in dispute. (*People v. Lucero* (1998) 64 Cal.App.4th 1107, 1109-1110; *People v. Scalzi* (1981) 126 Cal.App.3d 901, 907.)

Only relevant evidence is admissible (Evid. Code, § 350), and to be relevant evidence must have some tendency to prove or disprove a disputed fact of consequence to the determination of the case (*id*., § 210). Testimony from a police officer relating

12

information he received from a third party to explain why the officer acted as he did is not relevant when the good faith or reasonableness of his conduct is not at issue.  (*People v. Lucero*, *supra*, 64 Cal.App.4th at pp. 1109-1110; *People v. Reyes* (1976) 62 Cal.App.3d 53, 68.)  Here, the questions presented to the trial court were whether defendant maliciously and unlawfully removed or destroyed any part of any railroad track or fixture (§ 587, subd. (a)), and whether defendant knowingly received or concealed stolen property (§ 496, subd. (a)).  The information that prompted the sergeant to conduct his investigation had no tendency to prove or disprove that defendant committed the offenses.  Thus, the sergeant's testimony about the anonymous tip "was simply irrelevant for the nonhearsay purpose offered because it had no tendency in reason to prove any disputed issue of fact in the action." (*People v. Lucero*, *supra*, at p. 1110.)

A leading evidentiary treatise has described the problem as follows:  "One area where abuse may be a particular problem involves statements by arresting or investigating officers regarding the reason for their presence at the scene of a crime.  The officers should not be put in the misleading position of appearing to have happened upon the scene and therefore should be entitled to provide some explanation for their presence and conduct.  They should not, however, be allowed to relate historical aspects of the case, such as complaints and reports of others containing inadmissible hearsay.  Such statements are sometimes erroneously admitted under the argument that the officers are entitled to give the information upon which they acted.  The need for this evidence is slight, and the likelihood of misuse great.  Instead, a statement that an officer acted 'upon

13

information received,' or words to that effect, should be sufficient." (2 McCormick, Evidence (7th ed. 2013) Hearsay, § 249, pp. 193-195.)

Nevertheless, the trial court's error in admitting the citizen's statements and the trial court's error in purportedly relying on what the citizen informed the sergeant in its statement of decision was harmless. (*People v. Reed* (1996) 13 Cal.4th 217, 230-231.) As explained below (at p. 15, *post*), II B., given the ample circumstantial evidence of defendant's guilt, there is sufficient evidence to support a finding defendant committed the charged crimes, even without the citizen's statements. On this record, we cannot say "it is reasonably probable that a result more favorable to [defendant] would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836.) We thus discern no "miscarriage of justice" that would allow us to reverse the judgment based on the trial court's error in admitting and purportedly relying on the challenged testimony. (Cal. Const., art. VI, § 13; Evid. Code, § 353, subd. (b); see *People v. Lucero*, *supra*, 64 Cal.App.4th at p. 1110 [concluding error was harmless under similar circumstances].)

B.    *Sufficiency of the Evidence*

Defendant contends when evidence of the citizen's statement is disregarded, there is insufficient evidence to support his convictions for tampering with a railroad (§ 587, subd. (a)) and receiving stolen property (§ 496, subd. (a)). We disagree.

14

In addressing a challenge to the sufficiency of the evidence supporting defendant's convictions, this court must determine "'whether from the evidence, including all reasonable inferences to be drawn therefrom, there is any substantial evidence of the existence of each element of the offense charged.' [Citations.]" (*People v. Crittenden* (1994) 9 Cal.4th 83, 139, fn. 13; see *Jackson v. Virginia* (1979) 443 U.S. 307, 319; *People v. Johnson* (1980) 26 Cal.3d 557, 578.) In making this determination, "[the appellate court] must examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.]" (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)

The standard of review is the same when the People rely mainly on circumstantial evidence. (*People v. Stanley* (1995) 10 Cal.4th 764, 793; *People v. Bean* (1988) 46 Cal.3d 919, 932 [conviction based on circumstantial evidence will be affirmed if circumstances reasonably justify trier of fact's findings].) Substantial evidence includes circumstantial evidence and the reasonable inferences drawn from that evidence. (*People v. Ceja* (1993) 4 Cal.4th 1134, 1138-1139.)

The elements to the offense of tampering with a railroad under section 587, subdivision (a), are: (1) the defendant "[r]emoves, displaces, injures, or destroys any part of any railroad, . . . or any track of any railroad, or . . . other structure or fixture, or any

part thereof, attached to or connected with any railroad"; and (2) the defendant does so maliciously. (§ 587, subd. (a).)

The elements to the offense of receiving stolen property under section 496, subdivision (a), are: "(1) stolen property; (2) knowledge that the property was stolen; and (3) possession of the stolen property." (*People v. King* (2000) 81 Cal.App.4th 472, 476 [Fourth Dist., Div. Two].)

Ample circumstantial evidence in the record demonstrates that defendant tampered with railroad tracks and took property belonging to the railroad company. Sergeant Huskey saw defendant crouched over the center of the railroad tracks where copper wires had been freshly cut, and a vehicle parked about 400 feet away. When Sergeant Huskey made eye contact with defendant, defendant appeared nervous, stood up, and began walking away from the sergeant. Meanwhile, as Sergeant Huskey exited his car, the nearby waiting vehicle accelerated from the railroad and out of sight. When Sergeant Huskey asked defendant what he was doing, defendant continued walking, and did not stop or turn around to the sergeant. As Sergeant Huskey approached defendant, he noticed defendant had freshly cut copper wires clenched in his left fist, close to the middle of his body. Based on the sergeant's training and experience, the sergeant believed defendant was trying to conceal the copper wires. Defendant also had in his right, front pants pocket, covered by his shirt, a wire cutting tool capable of cutting the copper wires. Moreover, defendant admitted he had scrapped copper wires in the past, knew he would receive money for them, and would scrap anything he could find.

16

Furthermore, in a 40-foot area in front of where defendant had been walking, Sergeant Huskey observed no cut wires; however, in the area behind where Sergeant Huskey first made contact with defendant, the sergeant found approximately four locations where the wires had been cut. While defendant testified he had found both the wire cutting tool and the freshly cut wires laying on the tracks, BNSF officials explained that the wires had been freshly cut; that the wire cutting tool defendant possessed was capable of cutting the wires on the railroad tracks; that in similar investigations, BNSF had never come across wires laying on the tracks; and that based on company policy BNSF would never leave cut wires on the railroad tracks as the cut wires could cause an activation failure affecting the trains' operation. All of the above evidence points to defendant's consciousness of guilt and provides sufficient reasonable, credible, and solid evidence for a reasonable trier of fact to find defendant guilty of the charged crimes beyond a reasonable doubt.

Defendant chooses to characterize the above evidence as circumstantial. However, it was substantial evidence from which the trial court reasonably could infer that defendant tampered with railroad tracks and knowingly possessed the stolen copper wires. (*People v. Ceja*, *supra*, 4 Cal.4th at pp. 1138-1139.)

Defendant argues there was insufficient evidence to support the convictions because: (1) he told Sergeant Huskey and testified that he found the copper wires and the tool while walking on the railroad tracks; (2) he did not attempt to get rid of the six pieces of wire in his possession when Sergeant Huskey approached him; (3) the wires that had been removed were removed from a continuous section of the tracks 300 feet long and no

17

wires had been removed outside that short area; and (4) eight pieces of wire had been removed but defendant was found with only six pieces. From this evidence, defendant suggests that someone other than defendant removed the wires from the railroad tracks and took them out of the area. However, it is the province of the trier of fact to determine the credibility of witnesses and the truth or falsity of the facts upon which a determination depends. (*People v. Jones* (1990) 51 Cal.3d 294, 314.) The trial court here found defendant's version of the events not credible.

Defendant further asserts that the prosecution failed to prove he knew the copper wires were stolen, and therefore his conviction for possession of stolen property must be reversed. "The knowledge element of receiving stolen property is normally proved not by direct evidence but by an inference from circumstantial evidence. [Citation.]" (*People v. Alvarado* (1982) 133 Cal.App.3d 1003, 1019.) For example, knowledge may be "inferred from the defendant's failure to explain how he came to possess a stolen item or his offer of an unsatisfactory explanation or from suspicious circumstances attendant upon his possession of the item. [Citations.]" (*Id*. at pp. 1019-1020.) Moreover, "proof of knowing possession by a defendant of recently stolen property raises a strong inference of the other element of the crime: the defendant's knowledge of the tainted nature of the property. This inference is so substantial that only 'slight' additional corroborating evidence need be adduced in order to permit a finding of guilty. [Citation.]" (*People v. Anderson* (1989) 210 Cal.App.3d 414, 421.)

18

Circumstantial evidence here is sufficient to establish defendant knew the copper wires were stolen. Defendant was seen crouched over the railroad tracks where copper wires had been freshly cut. Moreover, defendant was found in possession of six pieces of copper wire clenched in his fist and a tool capable of cutting such wire hidden in the pocket of his pants. Furthermore, when defendant saw Sergeant Huskey, he appeared nervous and attempted to walk away from the sergeant. This evidence is sufficient to allow a rational trier of fact to conclude defendant knew the copper wires were stolen. In other words, we cannot say that no rational trier of fact reasonably could have concluded from such evidence that defendant had the requisite knowledge to be guilty of receiving stolen property. Defendant's statements that he found the copper wires and tool while walking on the tracks do not change this result. The trial court was free to weigh the evidence and reject defendant's testimony, a decision we cannot second guess on appeal. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

On this record, the trial court acted well within its fact-finding powers in rejecting defendant's explanation and accepting the prosecution's evidence that defendant tampered with the railroad tracks and possessed recently stolen property under suspicious circumstances and with no satisfactory explanation. The nature and circumstances of defendant's possession, and his less than credible explanation, thus supported the trial court's findings.

## III

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
                                                                    P. J.

We concur:


KING
                        J.


CODRINGTON
                        J.